UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

F I L E D

MAR I 9 2015

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| Sierra Club, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Virginia Electric and Power Company d/b/a | ) |
| Dominion Virginia Power, | ) |
| Defendant. | ) |

COMPLAINT
(Jury Trial Demanded)

Case No. 2:15 cv 112

## NATURE OF THE CASE

1.      This action challenges the ongoing contamination of groundwater and surrounding surface waters from the Chesapeake Energy Center power plant (the "CEC power plant") in the City of Chesapeake, Virginia by Virginia Electric and Power Company d/b/a Dominion Virginia Power ("Dominion" or "Defendant").

2.      Since 1953, Dominion has disposed of coal combustion waste – or coal ash – produced at its CEC power plant in ash disposal facilities located on a narrow peninsula, surrounded by the Southern Branch of the Elizabeth River on the eastern side; Deep Creek, a tributary to the river, on the southern side; and a cooling water discharge channel on the western side of the site.

3.      For at least two decades, these ash disposal facilities have contaminated and are continuing to contaminate groundwater with arsenic and numerous other heavy metals and harmful pollutants.

4.      Arsenic concentrations, for example, have routinely been detected at over thirty times Virginia's groundwater protection standard.

5.      The contaminated groundwater flows directly into the surrounding surface water bodies.

6.      The CEC power plant operates under a Virginia Pollutant Discharge Elimination System ("VPDES") permit, VPDES Permit No. VA0004081 (the "VPDES Permit"), issued to Dominion by the Virginia Department of Environmental Quality ("DEQ").

7.      The VPDES Permit does not authorize the leaching of coal ash contaminants into the groundwater or into the surrounding surface waters via the groundwater.

8.      Dominion's unauthorized discharge of pollutants violates the federal Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and the terms of the VPDES Permit.

9.      Sierra Club brings this citizen enforcement action under section 505 of the Clean Water Act, 33 U.S.C. § 1365, to stop these ongoing violations and the severe and persistent pollution from the CEC power plant.

10.     Sierra Club seeks an order from this Court to:

(i)     Declare that Dominion is violating the Clean Water Act by discharging pollutants from the CEC power plant's coal ash disposal facilities into the surrounding waterways via hydrologically-connected groundwater and by violating the terms of the VPDES Permit;

(ii)    Issue appropriate injunctive relief requiring Dominion to stop the pollution, to remove all coal ash from the CEC power plant's coal ash disposal facilities to an appropriately lined landfill away from waterways, and to remediate the contamination from these facilities;

(iii)   Assess civil penalties;

(iv)    Award Sierra Club all costs and expenses of this action, including reasonable attorneys' and expert fees; and

(v)     Award such other relief as the Court deems just and proper.

2

## JURISDICTION AND VENUE

11.     Sierra Club's claims arise under the federal Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA" or "Clean Water Act").

12.     The CWA's section 505 citizen suit provision, 33 U.S.C. § 1365, authorizes Sierra Club to bring this enforcement action.

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14.     The CEC power plant, where the violations giving rise to the claims set forth herein occurred, is located in the City of Chesapeake, Virginia.

15.     Venue is proper in the Norfolk Division of the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b), 33 U.S.C. § 1365(c)(1), and Local Civil Rule 3.

## NOTICE OF INTENT TO SUE

16.     Plaintiff and its members are individuals and/or associations and are therefore "persons" within the meaning of the CWA citizen suit provision. 33 U.S.C. § 1362(5).

17.     Plaintiff and its members are persons having an interest that is or may be adversely affected by the facts of this case and are therefore "citizens" within the meaning of the CWA citizen suit provision. 33 U.S.C. § 1365(g).

18.     Dominion is a Virginia corporation with its headquarters in Richmond, Virginia and is therefore a "person" within the meaning of the CWA citizen suit provision. 33 U.S.C. § 1362(5).

19.     In compliance with the citizen suit provision's notice requirements, CWA section 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(1), on 18 December 2014, Sierra Club provided Dominion, the Administrator of the United States Environmental Protection

Agency ("EPA"), and DEQ with notice of the violations specified in this complaint and its intent to file suit should those violations continue.

20.     Notice was provided via hand delivery and certified U.S. mail to Dominion, and by certified U.S. mail to EPA and DEQ. A copy of the notice letter is attached as Exhibit A.

21.     More than sixty days have passed since the notice was served, and the violations identified in the notice letter are ongoing and continuing at this time and are likely to continue in the future.

22.     Neither EPA nor DEQ has commenced or is diligently prosecuting a civil or criminal action to redress the asserted violations.

## PARTIES AND STANDING

### Plaintiff Sierra Club

23.     Sierra Club is the Plaintiff.

24.     Sierra Club is a national nonprofit organization dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and encouraging humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's concerns include the protection and enjoyment of Virginia's coastal and inland waterways, including the Southern Branch of the Elizabeth River and its tributaries.

25.     Sierra Club has approximately 653,848 members nationwide and 16,158 members in the Commonwealth of Virginia.

<u>Defendant Virginia Electric and Power Company d/b/a Dominion Virginia Power</u>

26.    The Defendant, Virginia Electric and Power Company d/b/a Dominion Virginia Power, is a Virginia corporation with its headquarters in Richmond, Virginia.

27.    Dominion owns and operates the CEC power plant located at 2701 Vepco Street in the City of Chesapeake, Virginia.

<u>Standing</u>

28.    Sierra Club and its members suffer direct harm from Dominion's unpermitted discharges from the coal ash disposal facilities at the CEC power plant.

29.    Sierra Club and its members have longstanding concerns about the impact of coal ash disposal facilities on water quality and wildlife in rivers and creeks across Virginia, including the Southern Branch of the Elizabeth River and Deep Creek.

30.    Sierra Club has devoted significant resources to addressing contamination from coal ash disposal facilities by, among other things, holding events, publishing reports, sending out alerts and information to its members, and speaking at public meetings.

31.    Both the Southern Branch of the Elizabeth River and Deep Creek are popular waterways for fishing, boating, and other recreational activities.

32.    Local boat ramps and parks provide the public with ready access to both waterways.

33.    Sierra Club members boat, fish, and bird in and around Deep Creek and the Southern Branch of the Elizabeth River adjacent to and downstream from Dominion's CEC power plant.

34.    Dominion's ongoing discharges of pollutants from the CEC coal ash disposal facilities in violation of the Clean Water Act irreparably harm Sierra Club's and its members' use and enjoyment of Deep Creek and the Southern Branch of the Elizabeth River.

5

35. Sierra Club members enjoy the recreational benefits of the area less than they did before they were aware of the pollution, and they visit the area less frequently than they would if the discharges were not occurring.

36. The illegal discharges from Dominion's coal ash disposal facilities into the waters of the United States have injured and continue to injure Sierra Club and its members.

37. An order from this Court requiring Dominion to take immediate and substantial action to stop the pollution from the coal ash disposal facilities; to remove the coal ash to dry, lined storage facilities away from the surrounding waterways; to remediate the groundwater contamination from the CEC power plant; and to comply with the other relief sought in this action, would redress Sierra Club's and its members' injuries.

## STATUTORY BACKGROUND

38. The objective of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA § 101(a), 33 U.S.C. § 1251(a).

39. To accomplish that objective, Congress established the national goal that "the discharge of pollutants into the navigable waters be eliminated," with an interim goal of achieving water quality that "provides for the protection and propagation of fish, shellfish, and wildlife, and provides for recreation in and on the water." *Id.* § 1251(a)(1), (a)(2).

40. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from any point source to waters of the United States except in compliance with a permit issued pursuant to section 402 of the Clean Water Act, 33 U.S.C. § 1342.

41. Section 402(a) establishes the National Pollution Discharge Elimination System ("NPDES") permit program for regulating the discharge of pollutants into waters of the United States. 33 U.S.C. § 1342(a).

42.     Section 402 vests EPA with permitting authority that EPA may delegate to a state if the state demonstrates that it meets certain federally-mandated requirements. 33 U.S.C. § 1342(b)(1)-(9).

43.     In Virginia, EPA has delegated its Clean Water Act § 402 permitting authority to the Virginia State Water Control Board, and DEQ administers this program through the issuance of Virginia Pollution Discharge Elimination System permits under the State Water Control Law. *See* 40 Fed. Reg. 20,129 (8 May 1975); Va. Code Ann. § 62.1-44.2 *et seq.*

44.     Under the Clean Water Act, a "pollutant" is any "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." CWA § 502(6), 33 U.S.C. § 1362(6).

45.     The definition of "pollutant" under the Clean Water Act includes coal combustion waste, as well as its constituent pollutants.

46.     Section 502 of the Clean Water Act defines a "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

47.     Sediment basins, slurry ponds, drainage ponds, leachate collection basins, landfills, and coal refuse piles all fall under the ambit of the Clean Water Act's broad definition of point sources.

48.     Once a "discernible, confined and discrete conveyance" has been used to contain a pollutant, a point source exists, and all discharges from that point source must be permitted.

49.     Each discharge of a pollutant that is not authorized by the permit, and each violation of a

Clean Water Act section 402 permit, violates the Clean Water Act. CWA §§ 301(a), 402(a),

505(f)(6), 33 U.S.C. §§ 1311(a), 1342(a), 1365(f)(6).

## FACTUAL BACKGROUND

### Description of the CEC Power Plant and Coal Ash Disposal Facilities

50.     Dominion owns and operates the CEC power plant, located in the City of Chesapeake,

Virginia.

51.     Dominion built the CEC power plant on a site consisting almost entirely of wetlands or

marshy areas.

52.     The plant began operating as a coal-fired electric generating facility in 1953 and is sited

on a narrow peninsula surrounded by the Southern Branch of the Elizabeth River on the eastern

side, Deep Creek on the southern side, and a cooling water discharge channel on the western

side. A map of the site is attached as Exhibit B.

53.     The combustion of coal to make electricity results in a waste by-product, commonly

referred to as coal ash, coal combustion waste, or coal combustion residuals.

54.     Coal ash that rises upward during combustion, and is then captured in the stack or

chimney, is commonly referred to as "fly ash."

55.     Coal ash that is too large to be carried up into the smoke stacks, and thus forms in the

bottom of the coal furnace during combustion, is commonly referred to as "bottom ash."

56.     Coal ash contains harmful pollutants such as arsenic, barium, beryllium, cadmium,

chromium, cobalt, lead, nickel, mercury, selenium, sulfide, vanadium, and zinc.

57.     Over the last sixty years, Dominion has disposed of coal ash generated at the CEC power plant in old, unlined pits; in a coal ash landfill; and in an unlined bottom ash and sedimentation pond (collectively, "coal ash disposal facilities"), as described below.

58.     Dominion ceased burning coal at the CEC power plant at some point during the last quarter of 2014.

59.     Despite the cessation of coal-fired operations, pollutants in the coal ash from Dominion's coal ash disposal facilities are leaching and will continue to leach into the groundwater that flows into the surrounding waterways.

<u>Unlined Disposal Pits</u>

60.     In the 1950s, Dominion disposed of an unknown quantity of coal ash onsite in two unlined pits (the "northern pits") north of the current coal ash landfill's footprint.

61.     By at least 1965, Dominion had expanded these unlined pits south to cover nearly the entire peninsula.

62.     On information and belief, by 1980, Dominion no longer used the northern pits.

63.     On information and belief, Dominion has not removed the ash from the northern pits.

64.     Dominion continued to dispose of its coal ash in the remaining unlined pits to the south (the "southern pits") until about 1985, when these pits had reached or were nearing capacity and could no longer be used to store new waste.

65.     The total size of the original northern pits is unknown. These pits likely covered over 23 acres of land.

66.     The unlined southern pits likely encompass over 30 acres of land, and possibly more.

## The Ash Landfill

67.    In or about 1985, Dominion constructed a landfill, for the disposal of ash, directly on top of the southern pits.

68.    Prior to constructing the landfill, Dominion did not excavate any of the ash from the southern pits.

69.    Only a 20 mil (0.02 inch) polyethylene liner separates the landfill from the underlying southern pits.

70.    On information and belief, Dominion did not install a leachate collection system for the ash landfill.

71.    Fly ash was collected in siloes, wetted down to reduce dust emissions, and was then hauled by dump truck to the landfill where the ash was compacted, stored, and leveled. Bottom ash was also regularly deposited in the landfill.

72.    As of 2013, the landfill received 162,500 cubic yards of coal ash per year.

73.    Dominion's most recent estimate is that the coal ash landfill contains about 937,000 cubic yards of coal ash waste.

## The Bottom Ash Pond

74.    In or about 1985, Dominion also constructed a bottom ash and sedimentation pond (the "bottom ash pond") to store and treat bottom ash sluiced from the boilers.

75.    Dominion regularly excavated the bottom ash pond and deposited the ash in the landfill.

76.    The bottom ash pond is unlined and was built directly within the footprint of the old unlined southern pits that also underlie the coal ash landfill.

77.    On information and belief, the bottom ash pond is in direct contact with groundwater.

78.    Dominion used reclaimed coal ash to construct some or all of the bottom ash pond berms.

79.     In a September 2010 report assessing the integrity and safety of the combined bottom ash and sedimentation pond at the CEC, EPA rated the hazard potential of the pond as "significant," meaning that a failure of the pond embankments "could cause environmental damage if the [coal combustion waste] and the sluice water were released into the surrounding rivers that ultimately flow in the Chesapeake Bay but loss of life does not appear to be probable."

80.     The 2010 EPA report also rated the overall condition of the pond as "poor," indicating that, based on stability analyses, "acceptable performance is not expected under recommended loading conditions."

81.     Subsequently Dominion has taken some measures to attempt to stabilize the shorelines of the facility.

82.     The 2010 EPA report did not assess the structural integrity and safety of the coal ash landfill.

Hydrological Conditions

83.     Dominion estimates that a layer of coal ash 15 to 20 feet thick remains in the unlined southern pits that underlie the landfill and bottom ash pond and that this layer of ash extends from 6 feet below mean sea level to 19 feet above mean sea level.

84.     Groundwater elevations have been measured as high as just over 16 feet above sea level at the site.

85.     As a result, the coal ash in the unlined southern pits sits in the groundwater, thereby leaching coal ash pollutants into the groundwater. Much of the coal ash is continuously saturated with groundwater.

86.     On information and belief, the liner separating the ash pits from the coal ash landfill is leaking or otherwise has failed, resulting in the leaching of pollutants from the landfill into the groundwater.

87.     In addition, on information and belief, coal ash in the bottom ash pond is leaching pollutants into the groundwater.

88.     Groundwater in and under the coal ash disposal facilities flows to the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel that surround the site and is therefore hydrologically connected to these surface waters.

The VPDES Permit

89.     The VPDES Permit authorizes wastewater discharges from the CEC power plant only through specified outfalls. A copy of the Permit is attached as Exhibit C.

90.     Wastewater from the bottom ash pond discharges from outfall 002 into Deep Creek.

91.     Outfall 002 is the only authorized discharge point under the VPDES Permit that is related to the coal ash disposal facilities.

92.     The VPDES Permit does not otherwise authorize any wastewater discharges from the coal ash landfill, the bottom ash pond, or the underlying coal ash pits.

The Solid Waste Facility Permit

93.     DEQ has permitted the coal ash landfill as an industrial landfill, Solid Waste Facility Permit No. 440, pursuant to Virginia's Waste Management Act, Va. Code § 10.1-1400 *et seq*.

94.     Dominion's Solid Waste Facility Permit No. 440 for the coal ash landfill does not authorize the discharge of pollutants into state waters or waters of the United States.

### Groundwater and Surface Water Contamination

95.     Under the Virginia Solid Waste Management Regulations, 9 Virginia Administrative Code ("VAC"), chapter 81, Dominion must maintain a network of groundwater monitoring wells for sampling groundwater around the ash landfill. *See generally* 9 VAC 20-81-250.

96.     Groundwater sampling from these monitoring wells indicates that Dominion's coal ash disposal facilities leach pollutants directly into the groundwater, and have been doing so for at least two decades.

97.     Some of the pollutants present in the groundwater include arsenic, barium, beryllium, cadmium, chromium, cobalt, copper, lead, nickel, selenium, sulfide, vanadium, and zinc.

98.     Several of the pollutants are present at levels that also exceed state groundwater protection standards, including arsenic, cobalt, and sulfide.

99.     For example, since at least 2002, Dominion's groundwater monitoring reports show persistent exceedances of the groundwater protection standard for arsenic in many of the monitoring wells located downgradient from the landfill.

100.    Several of these groundwater monitoring wells show persistent arsenic contamination at levels that *far* exceed the groundwater protection standard of 10 micrograms per liter (10 ug/L).

101.    Groundwater sampling results from 2013 and 2014, for example, indicate arsenic concentrations for certain wells as follows:

|            | Well CECW-6I | Well PO-10 | Well CECW-3D          |
|------------|--------------|------------|------------------------|
| May 2013   | 308 ug/L     | 153 ug/L   | 258 ug/L               |
| Oct. 2013  | 194 ug/L     | 149 ug/L   | No reported information |
| April 2014 | 294 ug/L     | 141 ug/L   | No reported information |
| Aug. 2014  | 278 ug/L     | 145 ug/L   | 216 ug/L               |

ɜ

102.    Groundwater contaminated with arsenic and other pollutants from coal ash disposal facilities at the CEC power plant flows into all three water bodies that surround the CEC power plant.

103.    Sediment core samples demonstrate that arsenic is reaching the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel at levels that far exceed the groundwater protection standard for arsenic.

104.    Arsenic is a known carcinogen that causes multiple forms of cancer in humans.

105.    Arsenic is also a toxic pollutant, 40 C.F.R. § 401.15, and a priority pollutant under the Clean Water Act, 40 C.F.R. Part 423 Appendix A.

106.    Arsenic is known to persist and concentrate in sediments and associated downstream waters, with the potential to cause significant poisoning of fish, benthic organisms, and other wildlife that live in rivers near coal ash impoundments.

<u>Failure to Halt Contamination</u>

107.    The exceedances of the groundwater protection standard for arsenic, which have occurred since at least 2002 through the present, triggered requirements under Virginia's Solid Waste Management regulations that Dominion prepare a corrective action plan, conduct additional groundwater monitoring, and propose a remedy that would achieve compliance with groundwater protection standards. *See* 9 VAC 20-81-260.

108.    In 2003, Dominion proposed "monitored natural attenuation" ("MNA") as a remedy to comply with the groundwater protection standard for arsenic.

109.    MNA relies solely on natural environmental processes to reduce concentrations of pollutants, with regularly scheduled monitoring to assess whether it is working.

110.    MNA does not involve any active remediation by Dominion.

111.    These natural environmental processes may render arsenic immobile or inert through geochemical reactions, but they do not destroy the arsenic.

112.    DEQ expressed concern over the effectiveness of Dominion's chosen remedy at the CEC power plant but ultimately incorporated it into Dominion's Solid Waste Facility Permit No. 440.

113.    In the twelve years that have passed since Dominion first proposed MNA in 2003, exceedances of the groundwater protection standard for arsenic have continued.

114.    During that time, Dominion has also detected additional pollutants, including cobalt and sulfide, at concentrations that exceed groundwater protection standards.

115.    As of March 2014, Dominion reported to DEQ that "[a]ll compliance wells continue to show exceedances of GPS [Groundwater Protection Standard]."

116.    Dominion has taken no active remedial steps to halt the ongoing contamination at the CEC power plant.

<u>Proposed Closure of Ash Landfill and Bottom Ash Pond</u>

117.    Dominion is now in the process of shutting down its coal-fired operations at the CEC power plant.

118.    On 11 June 2014, Dominion applied to DEQ for a permit modification to its Solid Waste Management Permit No. 440 to incorporate Dominion's proposed closure plans for the coal ash landfill and the bottom ash pond.

119.    Dominion proposes to leave the coal ash in place permanently and to "cap" the coal ash landfill and bottom ash pond.

120.    As set forth above, the coal ash in the unlined southern pits is sitting in the groundwater, thereby continuously leaching pollutants into the groundwater.

121.    Dominion's proposed closure plan will not prevent the continued saturation of the coal ash with groundwater or remedy the ongoing groundwater contamination from the coal ash disposal facilities.

122.    The contaminated groundwater will continue to discharge into the adjacent surface waters.

## CLAIMS FOR RELIEF

### COUNT I – DISCHARGES TO SURFACE WATERS VIA HYDROLOGICALLY CONNECTED GROUNDWATER

**Unauthorized Discharges of Pollution from a Point Source to Waters of the United States in Violation of the Clean Water Act**

123.    The allegations of the preceding paragraphs are incorporated by reference as if repeated and set forth herein.

124.    As alleged above, section 505 of the Clean Water Act, 33 U.S.C. § 1365(f), entitles Plaintiff to bring a civil action against Dominion for any violation of a Clean Water Act effluent standard or limitation.

125.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), is an effluent standard or limitation under section 505 of the Act, 33 U.S.C. § 1365(f).

126.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), makes unlawful any unauthorized discharges of pollutants by any person.

127.    Dominion is a "person" within the meaning of section 301(a), 33 U.S.C. § 1311(a).

128.    Groundwater monitoring reports show ongoing and persistent contamination of the groundwater at the CEC site with pollutants such as arsenic, barium, beryllium, cadmium, chromium, cobalt, copper, lead, nickel, selenium, sulfide, vanadium, and zinc.

129. These constituents are "pollutants" within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(6).

130. The coal ash landfill, the bottom ash pond, and the unlined ash pits are leaching these and other pollutants into the groundwater that flows into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel.

131. The leaching of pollutants constitutes the "discharge of pollutants" within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(12).

132. The coal ash disposal facilities are "point sources" within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(14).

133. The groundwater is hydrologically connected to the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel.

134. The Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel are "navigable waters" and "waters of the United States" within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(7).

135. The VPDES Permit does not authorize the discharge of pollutants to the Southern Branch of the Elizabeth River, Deep Creek, or the cooling water discharge channel from the unlined ash pits or the coal ash landfill.

136. The VPDES Permit does not authorize the discharge of pollutants to the Southern Branch of the Elizabeth River, Deep Creek, or the cooling water discharge channel from the bottom ash pond other than through outfall 002.

137. Further, Dominion's Solid Waste Facility Permit No. 440 does not authorize the discharge of pollutants into state waters or waters of the United States.

138.    These discharges are not in compliance with section 301, 33 U.S.C. § 1311, or any other section of the Clean Water Act.

139.    These unpermitted discharges of pollutants are thus unlawful under section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

140.    Therefore, Dominion is discharging pollutants from the coal ash disposal facilities to surface waters of the United States via hydrologically-connected groundwater in violation of the Clean Water Act.

141.    These violations of the Clean Water Act are ongoing and continuing.

## COUNT II – DISCHARGE OF SLUDGES OR SOLIDS REMOVED IN TREATMENT

### Ongoing Violations of Part II.R of Dominion's VPDES Permit

142.    The allegations of the preceding paragraphs are incorporated by reference as if repeated and set forth herein.

143.    Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), entitles Plaintiff to bring a civil action against Dominion for any violation of an effluent standard or limitation.

144.    The VPDES Permit is an "effluent standard or limitation" within the meaning of section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), because it is a permit issued under section 402 of the Act, 33 U.S.C. § 1342.

145.    A violation of a VPDES permit condition violates the Clean Water Act.

146.    Part II.R of the VPDES Permit states that "[s]olids, sludges or other pollutants removed in the course of treatment or management of pollutants shall be disposed of in a manner so as to prevent any pollutant from such materials from entering state waters."

147.    At the CEC power plant, the "treatment or management" of coal-ash derived pollutants includes, but is not limited to, the following:

18

- initial capture of the coal ash in the flue or in the bottom of the furnace;

- sedimentation in the unlined ash pits and bottom ash pond;

- dewatering of bottom ash excavated from the bottom ash pond before disposal into the landfill;

- wetting down of fly ash before disposal into the landfill; and

- compacting, further watering, and leveling of such ash once deposited in the landfill.

148. These treatment or management operations remove solids, sludges, or other pollutants, including coal ash waste and its constituent pollutants.

149. Dominion has disposed of the coal ash waste in the unlined ash pits, the bottom ash pond, and the coal ash landfill.

150. The coal ash landfill, the bottom ash pond, and the unlined ash pits have leached, and continue to leach, "pollutants" within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(6), including arsenic, barium, beryllium, cadmium, chromium, cobalt, copper, lead, nickel, selenium, sulfide, vanadium, and zinc, into the groundwater and into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel.

151. Virginia's definition of "state waters" in the State Water Control Law includes both surface waters and groundwater. Va. Code Ann. § 62.1-44.3.

152. Dominion is failing to prevent pollutants from the coal ash waste disposed of at the CEC power plant from entering state waters.

153. Therefore, Dominion is violating Part II.R of the VPDES Permit by allowing pollutants from solids, sludges, and other pollutants removed in the course of treatment or management of coal ash waste to enter state waters, including the groundwater.

154.    The discharging of pollutants in violation of an express permit condition violates the VPDES Permit and is therefore a violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

155.    The permit violations described above are ongoing and continuing.

156.    The Part II.R permit prohibition is enforceable through a citizen suit under the Clean Water Act. *See* CWA § 505, 33 U.S.C. § 1365.

## COUNT III – DISCHARGE OF DELETERIOUS SUBSTANCES INTO STATE WATERS

### Ongoing Violations of Part II.F of Dominion's VPDES Permit

157.    The allegations of the preceding paragraphs are incorporated by reference as if repeated and set forth herein.

158.    As alleged above, section 505 of the Clean Water Act, 33 U.S.C. § 1365(f), entitles Plaintiff to bring a civil action against Dominion for any violation of an effluent standard or limitation.

159.    The VPDES Permit is an "effluent standard or limitation" within the meaning of section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), because it is a permit issued under section 402 of the Act, 33 U.S.C. § 1342.

160.    A violation of a VPDES permit condition violates the Clean Water Act.

161.    The coal ash landfill, the bottom ash pond, and the unlined ash pits have leached, and continue to leach, pollutants into the groundwater and into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel.

162.    Part II.F of the VPDES Permit states that:

> Except in compliance with this permit, or another permit issued by the [State Water Control] Board, it shall be unlawful for any person to:

1.      Discharge into state waters sewage, industrial wastes, other wastes, or any noxious or deleterious substances; or

2.      Otherwise alter the physical, chemical, or biological properties of such state waters and make them detrimental to the public health, or to animal or aquatic life, or to the use of such waters for domestic or industrial consumption, or for recreation, or for other uses.

163.   Coal ash waste is an industrial waste.

164.   Coal ash waste is a noxious or deleterious substance.

165.   The discharge of coal ash waste and its constituent pollutants into the groundwater and then into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel constitutes a "discharge into state waters" of "industrial wastes . . . or any noxious or deleterious substances."

166.   The discharges of coal ash waste and its constituent pollutants into the groundwater and then into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel also "[o]therwise alter the physical, chemical, or biological properties of such state waters and make them detrimental to the public health, or to animal or aquatic life, or to the use of such waters for . . . recreation, or for other uses."

167.   The discharge of coal ash waste and its constituent pollutants into the groundwater and then into the Southern Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel violates permit condition Part II.F, paragraphs 1 and 2, set forth above.

168.   The State Water Control Board has not issued any other permit to Dominion to authorize these discharges.

169.   The violations of the VPDES Permit constitute violations of the Clean Water Act.

170.   The violations of Part II.F described above are ongoing and continuing.

171.    The Part II.F permit prohibition is enforceable through a citizen suit under the Clean

Water Act. *See* CWA § 505, 33 U.S.C. § 1365.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff, Sierra Club, respectfully requests that this Court:

A.      Issue a declaratory judgment stating that Dominion is violating the Clean Water Act with

its ongoing unpermitted discharges of contaminants into the groundwater and the Southern

Branch of the Elizabeth River, Deep Creek, and the cooling water discharge channel;

B.      Enter appropriate injunctive relief to ensure that Dominion:

   i.      Prevents the flow of coal ash pollutants into groundwater from the coal ash

           disposal facilities;

   ii.     Prevents the flow of contaminated groundwater into the Southern Branch of the

           Elizabeth River, Deep Creek, and the cooling water discharge channel;

   iii.    Removes as quickly as practicable all existing coal combustion byproducts from

           the coal ash landfill, the unlined ash pits, and the bottom ash pond to an

           appropriately lined industrial solid waste landfill away from waterways, with

           appropriate monitoring; and

   iv.     Remediates the groundwater contamination resulting from Dominion's

           unpermitted discharges of pollutants from the CEC power plant.

C.      Assess civil penalties against Dominion of up to $37,500 per violation per day pursuant

to sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a), and 74

Fed. Reg. 626-27 (7 Jan. 2009);

D.      Award Plaintiff the cost of this action, including reasonable attorneys' and expert fees, as

authorized by CWA § 505(d), 33 U.S.C. § 1365(d); and

E.     Grant Plaintiff such further and additional relief as the Court deems just and proper.


THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.



Respectfully submitted this 19th day of March 2015,


*Deborah M Murray*

Deborah M. Murray (Va. Bar No. 19000)
Gregory Buppert (Va. Bar No. 86676)
Sarah V. Fort (Va. Bar No. 86996)
William C. Cleveland (Va. Bar No. 88324, *application for*
 *admission to be submitted*)
Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902-5065
Telephone: 434.977.4090
Facsimile: 434.977.1483

*Attorneys for Plaintiff Sierra Club*