

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SIERRA CLUB,

    Plaintiff,

v.                                       CIVIL ACTION NO. 2:15cv112

VIRGINIA ELECTRIC AND POWER
COMPANY d/b/a DOMINION VIRGINIA
POWER,

    Defendant.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Virginia Electric and Power Company d/b/a Dominion Virginia Power ("Dominion")'s Motion to Dismiss. ECF No. 4. Sierra Club, a national nonprofit organization "dedicated to exploring, enjoying, and protecting the wild places of the earth," filed a Complaint against Defendant a Virginia corporation that operates the Chesapeake Energy Center Power Plant in Chesapeake, Virginia (the "CEC" power plant). Plaintiff cites the Clean Water Act and alleges that Defendant's disposal of combustion waste at the CEC power plant has contaminated and continues to contaminate groundwater with arsenic and other heavy metals and harmful pollutants. Plaintiff seeks a declaratory judgment stating that Defendant is violating the Clean Water Act, injunctive relief, civil penalties, costs, attorneys' fees, and expert fees. Defendant seeks dismissal of the Complaint on numerous grounds. For the reasons stated below, Defendant's Motion to Dismiss is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts alleged in the Complaint are as follows. This action challenges alleged contamination of groundwater and surrounding surface waters from the Chesapeake Energy Center power plant (the "CEC" power plant) in Chesapeake, Virginia by Virginia Electric and Power Company doing business as Dominion Virginia Power. Compl. ¶ 1. The CEC power plant operates under a Virginia Pollutant Discharge Elimination System permit ("VPDES" permit) issued to Dominion by the Virginia Department of Environmental Quality. ¶ 6. The VPDES permit does not authorize Dominion to introduce the alleged coal ash contaminants into the groundwater or the surrounding surface waters. ¶ 7. Defendant's unauthorized discharge of pollutants into the groundwater violates the federal Clean Water Act, 33 USC § 1251 and the terms of the VPDES permit. ¶ 8. Plaintiff Sierra Club brings this citizen enforcement action pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365. ¶ 9.

Plaintiff alleges that it and its members have "longstanding concerns about the impact of coal ash disposal facilities on water quality and wildlife in rivers and creeks across Virginia, including the Southern Branch of the Elizabeth River and Deep Creek." Compl. at ¶ 5. Specifically, Plaintiff alleges that its members fish, bird, and boat in and around Deep Creek and the Southern Branch of the Elizabeth River, which is adjacent to and downstream from the CEC power plant. ¶ 5. Plaintiff seeks, *inter alia*, an order requiring Defendant to take immediate and substantial action to stop the alleged pollution from the coal ash disposal facilities; remove the ash; remediate the groundwater contamination from the CEC power plant.

Plaintiffs now raise three claims against Defendant. Count One alleges Unauthorized Discharges of Pollution from a Point Source to Waters of the United States in Violation of the

Clean Water Act. Specifically, Plaintiff alleges that "[g]round water monitoring reports show ongoing and persistent contamination of the groundwater at the CEC site with pollutants such as arsenic, barium, beryllium, cadmium, chromium, cobalt, copper, lead, nickel, selenium, sulfide, vendium, and zinc." ¶ 128. Count Two alleges Ongoing Violations of Dominion's VPDES Permit by Discharge of Sludges or Solids Removed in Treatment. Count Three also alleges Ongoing Violations of Dominion's VPDES Permit, but Count Three pertains to Discharge of Deleterious Substances into State Waters.

Plaintiff requests the following relief: (1) a declaratory judgment stating that Dominion is violating the Clean Water Act; (2): Civil penalties against Dominion of up to $37,500 per violation per day pursuant to various sections of the Clean Water Act; (3) Costs including reasonable attorneys' fees and expert fee; and (4) such further and additional relief as the Court deems just and proper.

On April 9, 2015, Defendant filed its Motion to Dismiss on various grounds. Plaintiff filed a Memorandum in Opposition on April 23, 2015, and Defendant filed a reply on April 30, 2015. On October 22, 2015, Plaintiff filed Notice of Supplemental Authority, and Defendant filed a Response on October 29, 2015. This case has been fully briefed and is now ripe for judicial determination. The Court has determined that a hearing would not aid in the decisional process and therefore rules on the briefs. For the reasons stated below, Defendant's Motion is **DENIED**.

## II. STANDARD OF REVIEW

Defendant's Motion to Dismiss is based on Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can

be granted). Rule 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction over a claim or the cause of action as a whole. The Court assumes that all factual allegations in the complaint are true where the opposing party contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or whatever other evidence has been submitted on the issue. *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ P. 12(b)(6). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (internal quotations omitted)). Specifically, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the Court is bound to accept all of the factual allegations in the Complaint as true. *Id.* at 678. However, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. ANALYSIS

The Court will address each of Defendant's arguments separately, as each is relevant to all three of Plaintiff's counts. Defendant first argues that Plaintiff's claims are an improper collateral attack on the Industrial Landfill Solid Waste Facility Permit issued by the Virginia Department of Environmental Quality for the CEC. Next, Defendant posits that Plaintiff alleges only discharges to groundwater, which are outside the scope of the Clean Water Act. Finally, Defendant argues that Plaintiff lacks standing.

### A. Collateral Attack on the Industrial Landfill Solid Waste Facility Permit

Defendant first argues that the Complaint must be dismissed because the Virginia Waste Management Act ("VWMA"), bars Sierra Club's action. Defendant asserts that this action is an impermissible collateral attack on the Waste Permit through the Clean Water Act.

In Virginia, coal ash, one of the contaminants alleged here, is regulated as solid waste through the VWMA. *See* 9 VAC 20-85-40(C)(1). Within the solid waste monitoring program are specific opportunities and avenues for public notice, review, and comment on permits. 9 VAC -450(A), (E)(4). Further, a party may appeal a permit decision, and all appeals proceed under the Virginia Administrative Process Act, Va Code Ann. § 2.2-4000 et seq.

In this case, the Waste Permit for the CEC was issued on July 27, 1984, and was amended in 1993, 2002, 2009, and 2011. The permit and all amendments were made available for public comment, and revised in part in response to comments. The same is true about the

VPDES permit for discharges from the CEC to neighboring surface waters, including the Elizabeth River—the permit was renewed and modified in 1995, 2000, 2002, 2007, and 2008 along with the opportunity for public notice and comment.

Defendant argues that "the Waste Permit comprehensively regulates groundwater impacts from the entire CEC site, and requires corrective action to address those impacts." ECF No. 5 at 15. Plaintiff, Defendant argues, "failed to exhaust its administrative rights to contest this remedy through the public proceedings associated with the Waste Permit and its several amendments over time. DEQ has already mandated through the solid waste program what Sierra Club seeks under the CWA." *Id.*

Sierra Club counters that Defendants fundamentally misunderstand the nature of this suit. ECF No. 13 at 19. Defendants, Sierra Club argues, have mischaracterized this as a suit against the validity of the VPDES permit, or a suit challenging the solid waste permit. Sierra Club argues that instead of challenging the permit itself, it is suing because of a violation of that permit. Specifically, "Sierra Club claims that Dominion is violating its VPDES permit, and thus the [Clean Water Act], because (1) its permit does not authorize the ongoing discharge of pollutants into surface waters via groundwater, Count I..., and (2) because the permit expressly prohibits such discharges, Counts II and III." ECF No. 13 at 19. Further, Sierra Club notes that this lawsuit does not challenge Dominion's solid waste permit or the VPDES permit, and that as Defendant concedes, the lawsuit does not concern the solid waste permit at all. *Id.*

The Court finds that this lawsuit does not constitute an improper collateral attack. The collateral attack doctrine is in place to prohibit a plaintiff in a civil case from directly attacking an underlying permit decisions. *Ohio Valley Envtl. Coal., Inc. v. Apogee Coal*, LLC, 531 F.

Supp. 2d 747, 759 (S.D.W. Va. 2008). A citizen suit alleging a violation of a valid permit is a separate and distinct action from one that challenges the very validity of the permit. The former is present in this case and is permissible in our federal courts. The latter constitutes an impermissible collateral attack. Several courts have similarly held. *See Ohio Valley Envtl. Coal., Inc*, 531 F. Supp. 2d at 759 ("[w]hen challenging is not to a permitting decision but a violation of an effluent limitation, a citizen-suit in federal court is the proper avenue for relief."); *W. Va. Highlands Conservancy v. Monongahela Power Co.*, 2012 WL 11122, at *4 (N.D.W. Va. Jan. 3, 2012) (rejecting a collateral attack argument because the complaint did not argue against of or seek relief against the ongoing permit process); *Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 893 (S.D.W. Va. 2011) (same); *Ohio Valley Envtl. Coal., Inc. v. Coal-Mac, Inc.*, 775 F. Supp. 2d 900, 918 (S.D.W. Va. 2011) (same).

The ultimate question regarding whether this is a collateral attack is whether Plaintiff is essentially challenging the validity of the permit. If that were the case, Plaintiff would necessarily fail. In *Palumbo v. Waste Tech. Indus*, 989 F.2d 156 (4th Cir. 1993), the court ruled for the defendants precisely because plaintiffs sought to invalidate a facility's permits. Never in Palumbo did plaintiff argue or allege ongoing permit noncompliance, which is the issue in this case. *Id.* In that case, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") found that the lawsuit was "at root a collateral attack" that alleged "essentially technical violations in the EPA permitting process." *Id.* That is decidedly distinguishable from this case, where Plaintiff alleges a continuous, routine, and ongoing violation of a validly issued permit.

Defendant also argues that because part of the relief Plaintiff seeks in this case is an order to remediate the groundwater contamination from the CEC power plant, this court lacks subject

matter jurisdiction because the relief sought has already been addressed by a regulatory scheme. Def's Mem. At 15. The Court finds no merit in this argument. The Court has already determined that it has subject matter jurisdiction, and thus a portion of the prayer for relief will not defeat jurisdiction in this case. Whether the Court orders the type of relief Plaintiff seeks, and whether that relief is appropriate are questions for a later time. At this stage in the proceedings, however, the Court finds that it has jurisdiction and the prayer for relief does not defeat that. Because Plaintiff is alleging a specific violation of a validly issued permit, and not the issuance of the permit itself, the Court finds that this citizen-suit is not an improper collateral attack, and the Court has jurisdiction.

## B. Discharge into Groundwater and the Scope of the Clean Water Act

Defendant's second basis for moving to dismiss this action is that Plaintiff's allegations are about discharges to groundwater, which are not, Defendant argues, regulated by the Clean Water Act. ECF No. 5 at 19. Defendant's position is that "[t]hroughout its complaint in this case, Sierra Club refers only to groundwater conditions that migrate to surface water bodies." *Id.* Because the Clean Water Act regulates point sources and waters of the United States, it cannot apply, Defendant asserts, to discharges to groundwater. *Id.* at 23.

Sierra Club counters that the Clean Water Act prohibits discharges of pollutants to surface waters via hydrologically-connected groundwater. ECF NO. 13 at 7. Specifically, Plaintiff alleges that

> Dominion's coal ash disposal facilities are discharging arsenic and numerous other harmful pollutants into groundwater that flows directly into the surrounding waterways. Compl. at ¶¶ 128-33, 140. Dominion's VPDES permit does not authorize such discharges. See id. at ¶¶ 135-36. Dominion's assertion that the complaint "alleges only discharges to groundwater," Mot. to Dismiss at 1, is plainly incorrect. Rather, Sierra Club claims that the ongoing, unauthorized

discharge of pollutants from the coal ash disposal facilities to "Waters of the United States," namely the Southern Branch of the Elizabeth River and Deep Creek, via the groundwater violates the CWA.

ECF No. 13 at 8.

Instead of arguing that the groundwater beneath the CEC plant is a "water of the United States" or a "navigable water," Plaintiff contends that the Clean Water Act "bars unpermitted discharges to groundwater that serves as 'a conduit through which pollutants are reaching navigable-in-fact waters.'"

The Court finds that Plaintiff has pleaded with sufficient particularity to survive a motion to dismiss on the question of whether the Clean Water Act applies to discharges which reach navigable waters through groundwater. The Clean Water Act prohibits discharging pollutants from a "point source" to "navigable waters" without first receiving a valid NPDES permit. 33 U.S.C. §§ 1319(c)(2)(A), 1342. *See also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387 (4th Cir. 2011). A point source is defined as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, [or] rolling stock...from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Not included in the definition of point source is "the type of pollution that arises from many dispersed activities over large areas and [which] is not traceable to any single discrete source." *Ecological Rights Found. V. Pac. Gas & Elec. Co.*, 713 F.3d 502, 508 (9th Cir. 2013).

Federal courts are split on the issue of whether groundwater that is hydrologically connected to surface water is covered under the Clean Water Act. Several courts have held that the Clean Water Act applies in situations similar to the instant case. *See N. Cal. River Watch v.*

9

*Mercer Fraser Co.*, 2005 WL 2122052 (N.D. Cal. Sept. 1, 2005); *Haw. Wildlife Fund v. Cnty. Of Maui*, 2015 WL 328227 (D. Haw. Jan. 23, 2015); *Greater Yellowstone Coal. V. Larson*, 641 F. Supp. 2d 1120, 1138 (D. Idaho 2009); *NW. Envtl. Def. Ctr. V. Grabhorn, Inc.*, 2009 WL 3672895 (D. Or. Oct. 30, 2009); *Sierra Club v. Colo. Ref. Co.*, 838 F. Supp. 1428, 1434 (D. Colo. 1993).

Other courts have come to the opposite conclusion, that the Clean Water Act does not cover discharges which enter surface waters through groundwater. *See Village of Oconomowoc Lake v. Dayton Hudson Corp.* 24 F.3d 962 (7th Cir. 1994); *D.E. Rice. V. Harken Exploration Co.*, 250 F.3d 264, 269 (5th Cir. 2001); *United States v. Johnson*, 437 F.3d 157, 161 (1st Cir. 2006). The Fourth Circuit is silent on this question.

A recent decision of a court of this Circuit in a case with very similar facts sided with those courts that view the Clean Water Act as extending federal court jurisdiction to the discharge of pollutants to surface waters via hydrologically connected groundwater. *See Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas*, LLC, No 1:14-cv-00753 (M.D.N.C. Oct. 20, 2015) (finding that the Clean Water Act regulates the discharge of pollutants to navigable waters via groundwater and that the factual allegations stated in the complaint allowed the court to reasonably infer that "substances removed in the course of wastewater treatment at the [power plant] have been disposed of in a manner that has allowed pollutants to enter protected waters."). Slip Op. at 25. *Yadkin Riverkeeper* involved a North Carolina power plant located on the Yadkin River that burned coal and created a substantial amount of coal combustion residuals and coal ash. *Id.* at 3. Plaintiffs there alleged a similar violation of a discharge permit as is alleged here. That court, upon thorough review of many of the same legal issues and cases that are the

subject of this litigation, denied defendant's motion to dismiss on the grounds that plaintiff stated a plausible case that the Clean Water Act could regulate the discharge of pollutants to navigable waters via groundwater. Certainly *Yadkin Riverkeeper* is not an identical case with identical facts, but the Court finds that it is close enough in all relevant respects such that it is significant and instructive.

Defendant next contends that even if the Court finds that the Clean Water Act or the VPDES permit extends to groundwater, it should abstain from asserting jurisdiction under *Burford v. Sun Oil, Co.*, 319 U.S. 315 (1943). *Burford* abstention is the doctrine under which federal courts should abstain from asserting jurisdiction over those cases that primarily concern issues of state law, provided adequate and timely state court review is available. Id. Courts may properly abstain under *Burford* where a case (1) presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result then at bar, or (2) if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989). In *Sugarloaf Citizens Ass'n v. Montgomery County, Md.*, 1994 U.S. App. LEXIS 21985 (4th Cir. 1994), the Fourth Circuit upheld a district court's abstention in a case where an environmental group challenged the Maryland Department of the Environment's decision to grant certain disposal permits to the defendants. *Id.* Plaintiffs in that case argued that they were bringing a claim under a citizen suit provision of federal law; however, the court's analysis determined that the group was simply challenging the state's decision to issue certain permits. *Sugarloaf* is of course distinguishable from the case at bar as this case involves allegations that Defendant is violating a validly issued

permit, not raising a challenge to the issuance of the permit itself. And, as the Court has already found that the there are sufficient facts pleaded to suggest that the federal Clean Water Act does authorize this suit and this Court does have jurisdiction, it sees no justifiable reason to abstain from exercising jurisdiction.

The Court therefore finds that Plaintiff has pleaded with sufficient particularity facts that state a plausible claim for relief.

## C. Standing

Defendant's final grounds for moving to dismiss revolve around the Plaintiff's ability to file this lawsuit in the first instance. Defendant asserts that Sierra Club lacks standing to sue. Specifically, Defendant argues that "nowhere in its complaint does Sierra Club identify by name or location a single individual member who has actually been injured. Instead, Sierra Club relies on a formulaic recitation of generalized harm that Courts have rejected in nearly identical circumstances." ECF No. 5 at 27. Defendants argue that "[e]ven more fatal to its case, Sierra Club alleges an injury that cannot fairly be traced to the challenged action..." *Id.*

Plaintiff counters that it has met its burden to prove standing through both the Complaint and the affidavits attached to its brief on this Motion. Sierra Club specifically argues that it has demonstrated injury to its members because it may "adequately allege injury in fact when [Sierra Club] aver[s] that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." ECF No. 13 at 27 (citing *American Canoe Ass'n v. Murphy Farms, Inc.*, 326, F.3d 505, 517 (4th Cir. 2003)). Plaintiff alleges that its members "boat, fish, and bird in and around Deep Creek and the Southern Branch of the Elizabeth River adjacent to and downstream from Dominion's CEC

power plant." ECF No. 13 at 27. Further, Plaintiff argues that its Complaint "alleges that Dominion's pollution has harmed its members' use and enjoyment of these waterways and caused them to visit the areas less frequently than they would if the discharges were not occurring." *Id.*

Pursuant to Article III of the United States Constitution, federal courts are restricted to adjudicating cases and controversies. The requirement that a plaintiff establish standing is "perhaps the most important" condition of juisticiability. *Friends of the Earth, Inc., v. Gaston Copper Recycling Corp.*, 629 F.3d 387 (4th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Courts of the Fourth Circuit are particularly concerned about enforcing the standing requirement to ensure that "a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate." *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005).

The Constitutional requirement for standing is met only where the plaintiff proves that: (1) he or she suffered an injury in fact that is concrete and particularized, and is actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, (1992). In additional to the Constitutional requirements for standing, an individual or organization bringing suit must also satisfy any statutory standing requirements. *Id.*

Plaintiffs here bring suit pursuant to the Clean Water Act, which confers standing upon any "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(a), (g). By meeting the Constitutional standing requirements under Article III, a plaintiff also satisfies the statutory threshold. Organizations may have standing to sue if there is an injury

to the organization itself or as a representative of its harmed members. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To meet this threshold, an organization must show that one of its members would have standing to sue in his or her own right. *Id.* (citing *Hunt v. Wash. State. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

A so-called "environmental plaintiff" such as Sierra Club adequately alleges injury in fact when they "aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Sierra Club v. Morton* 405 U.S. 727, 735 (1972). It is not enough to claim a generalized and nearby injury, a plaintiff must "use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Lujan*, 504 U.S. at 565-66.

Sierra Club has attached to its brief on the instant Motion declarations of Jeffrey Staples and Judith Hinch. Mr. Staples notes that he has been fishing and boating in the creek and river near the CEC for 20 years, that he sometimes fishes on the shoreline near the plant, and he visits the area about six times per year. ECF No. 13-1. Ms. Hinch has lived in the affected area for thirteen years, uses the creek and river for boating, and watches birds in the vicinity of the plant. Both individuals state that they are concerned about the impact coal ash pollutants could have on water quality and both state that their use and enjoyment of the affected area has been diminished. At the pleading stage, such averments made through member declarations are more than sufficient to establish injury in fact, and by extension, standing. *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 329 (4th Cir. 2008).

Courts on a Motion to Dismiss view the facts in the light most favorable to the non-moving party, and make all necessary inferences in favor of the nonmovant. Here, Plaintiff has

pleaded with sufficient particularity that it has suffered an injury in fact, that the injury is fairly traceable to Defendant, and that a favorable decision of this Court will redress Plaintiff's injury.

The Court therefore finds that the Plaintiff in this citizen-suit has satisfied the constitutional standing requirement pursuant to Article III of the United States Constitution, and the statutory requirement pursuant to the Clean Water Act. Further, Sierra Club has pleaded sufficient facts to assert organizational standing on behalf of its members. In short, the Plaintiff has standing to assert its claims in this federal court.

## IV. CONCLUSION

After a thorough and exhaustive review of the Complaint, the Motion and briefs on the Motion, and the accompanying attachments, the Court concludes that the Complaint contains sufficient factual matter, accepted as true, which states a claim to relief that is plausible on its face. For the reasons outlined above, Defendant's Motion to Dismiss is **DENIED**. Defendant's Request For a Hearing on her Motion to Dismiss, ECF. No. 14, is **DENIED**, as a hearing is unnecessary to resolve the instant Motion.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 6, 2015

/s/
Raymond A. Jackson
United States District Judge