# Exhibit A

# Declaration of Deborah M. Murray

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

SIERRA CLUB

        Plaintiff,                             Civil Action No.

v.                                              2:15-cv-112-JAG-RJK

VIRGINIA ELECTRIC AND POWER COMPANY d/b/a
DOMINION ENERGY VIRGINIA,

        Defendant.

———————————————————

**DECLARATION OF DEBORAH M. MURRAY IN SUPPORT OF PLAINTIFF'S
MOTION FOR REASONABLE ATTORNEY AND EXPERT WITNESS FEES**

    I, Deborah M. Murray, declare as follows:

    1.    I am a senior attorney at the Southern Environmental Law Center ("SELC"). I submit this declaration in support of Plaintiff Sierra Club's motion to recover reasonable attorney and expert witness fees. I am the lead attorney for plaintiff in this case, and I am fully familiar with all aspects of the litigation.

    2.    Plaintiff seeks to recover fees for the time and effort expended by the following SELC, or former, SELC attorneys: Bradford McLane (former), Christopher Bowers, Nathaniel Benforado, Gregory Buppert, William C. Cleveland, IV, Jonathan Gendzier, Sarah Fort (former), and me. I briefly describe below the qualifications of each attorney and the nature and extent of the work performed. The resumes of each of the attorneys are included as Exhibit B to Plaintiff's Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert Witness Fees. I also describe the billing judgment exercised to arrive at a reasonable number of

hours requested for the fee award, and the reasonable hourly rates that Sierra Club asks the Court to apply. I also set forth the expert witness fees incurred for which Sierra Club seeks recovery.

Attorney Qualifications

3. I have been an attorney with SELC since 1988. I received a Bachelor of Arts degree with highest distinction from the University of Virginia (1976), and a J.D. from the University of Virginia School of Law (1979). After graduating from law school, I clerked for the Honorable Malcolm R. Wilkey, then U.S. Circuit Judge for the District of Columbia Circuit. Before joining SELC, I was a lawyer in private practice for six years following my clerkship. I am admitted to the bars of the District of Columbia and Virginia.

4. As an attorney at SELC, my work, and that of my colleagues, focuses exclusively on environmental concerns. SELC is a 501(c)(3) non-profit, public interest organization. My practice at SELC is principally focused on litigation arising under federal statutes. I have served as the lead attorney in several cases under the federal Clean Water Act.

5. Bradford McLane worked for SELC as a senior attorney from November 2015 through November 2016 when he left SELC for family reasons. Prior to joining SELC, he worked for 9 years as an attorney with the U.S. Department of Justice, Environment and Natural Resources Division, with 7 of those years as a trial attorney in the Environmental Enforcement Section of the Department of Justice ("DOJ"). He received his J.D. from Georgetown University Law Center (2006) and a Bachelor of Science from the University of the South.

6. As an attorney with the Department of Justice, Mr. McLane represented the United States in complex enforcement cases under the Clean Air Act and CERCLA, and, as an attorney in DOJ's Law and Policy Section, he represented the United States as amicus curiae in cases involving the federal Clean Water Act and the Endangered Species Act.

7.  Christopher Bowers is a senior attorney in SELC's Atlanta Office. He received a Bachelor of Arts degree cum laude from the University of Washington in 1998, and a J.D. from the University of Minnesota Law School in 2002. Prior to joining SELC in 2015, he was an attorney in the Environmental Section of Smith, Gambrell & Russell, LLP, in Atlanta, Georgia for 11 years. His practice at Smith Gambrell focused on complex commercial and environmental litigation including claims arising under the federal Clean Water Act, CERCLA, and the Georgia Hazardous Sites Response Act, the state equivalent to CERCLA. He is a member of the State Bar of Georgia.

8.  Nathaniel Benforado began working as an attorney with SELC in March 2016. Before that, he was a litigation associate with Jenner & Block in New York for four and one-half years, with a focus on complex commercial disputes and securities litigation. He received his J.D. from New York University School of Law (2010) and a Bachelor of Science in Chemical Engineering from the University of Virginia. He is a member of the Virginia and New York bars.

9.  Greg Buppert joined SELC in 2013. He has been practicing law since receiving his J.D. from George Washington University Law School in 2005. Before coming to SELC, he was an attorney with Defenders of Wildlife in Washington D.C. for three years, and in private practice in Nashville for four and one-half years prior to that. In addition to his law degree, he also has a Master of Environmental Management from Duke University's Nicholas School of the Environment, and a Bachelor of Arts from Bowdoin College. He is a member of the Virginia, District of Columbia, and Tennessee bars.

10. Will Cleveland began working at SELC in September 2014. Prior to that, he was an associate at two different law firms, with a focus on litigation, first at Baker Botts LLP in

Washington, D.C., from November 2009 through June 2012, and then at K&L Gates, LLP in Charleston, South Carolina, from 2012-2014. He has a law degree from the University of Virginia (2009), and a master's degree and B.A. from Middlebury College (2007, 2004, respectively).

11. Sarah Fort worked as an associate attorney with SELC from 2013 until September 2015. The associate attorney position is an entry level position with a two- or three-year term. Ms. Fort is currently employed as a litigation fellow at the Natural Resources Defense Council in Washington, D.C. She has a J.D. from Harvard Law School (2012) and received a Bachelor of Arts degree, magna cum laude, from Brown University. After graduating from law school, she clerked for the Honorable F. Dennis Saylor IV, U.S. District Judge for the District of Massachusetts. She is a member of the Virginia, Massachusetts, and District of Columbia bars.

12. Jonathan Gendzier has been an associate attorney with SELC since September 2015, taking Ms. Fort's place. He received his J.D. from Vanderbilt Law School (2015) and a Bachelor of Arts in Environmental Studies from Vanderbilt. He is a member of the Virginia bar.

<u>Attorney Roles and Nature and Extent of Work Performed</u>

13. Given the factual nature, the legal issues presented, and the compressed schedule in the Eastern District of Virginia, litigating this case on behalf of Plaintiff has been labor intensive. Each SELC attorney served an essential role, substantively contributing to the overall effort. As the lead attorney in this litigation, I have been involved in all aspects of the case, from the initial investigation of the case through my participation at trial and in post-trial briefing. I drafted and edited major briefs in the case, including Sierra Club's brief successfully opposing Dominion's motion to dismiss the complaint, Sierra Club's brief opposing Dominion's motion for summary judgment, and Sierra Club's post-trial briefing. I also engaged in discovery and

conducted the Rule 30(b)(6) deposition of Mr. Donald Hintz and the deposition of one of Dominion's experts, Dr. Stephen Mayo. I was primarily responsible for working with Sierra Club's experts on their initial and rebuttal expert reports. At trial, I conducted the direct examination of Sierra Club's expert witness, Dr. Robert Parette, and cross-examined Dr. Mayo, in addition to arguing various legal points at trial.

14. Mr. McLane joined SELC during the discovery phase of the litigation. He prepared discovery, reviewed documents produced by Dominion, and conducted depositions of Dominion's five fact witnesses, which included the 30(b)(6) depositions of two of those witnesses (Ms. Cathy Taylor and Mr. Ken Roller), and one expert witness (Dr. Daniel Stephens). He played a key role in pretrial preparations and in post-trial briefing. At trial, he conducted the direct examination of Sierra Club's expert, Mr. Anthony Brown, and cross-examined two of Dominion witnesses. Mr. McLane and I, as senior members on the case, also provided overall direction on strategy and tactical legal issues.

15. Mr. Bowers also played a major role in the case, beginning with the discovery phase of the litigation through trial. As an experienced litigator, he conducted depositions of two factual and two expert witnesses, and worked on pretrial filings, including Sierra Club's pretrial disclosures, pretrial stipulations, and the draft pretrial order. At trial, he conducted direct examination of two Sierra Club witnesses, presented certain fact witness testimony via deposition (by video and by reading into the record), and cross-examined two of Dominion's experts (Dr. Wade Nutter and Dr. Christopher Teaf). He also was principally responsible for drafting the summaries of Sierra Club's expert testimony filed with the Court post-trial.

16. Mr. Benforado joined SELC during the discovery phase of the case. He prepared discovery requests, reviewed documents produced in discovery, and assisted in deposition

preparations. He played an integral role in pretrial preparations and in drafting Sierra Club's brief opposing Dominion's motion for summary judgment, the pretrial bench memorandum requested by the Court, and Sierra Club's proposed findings of fact and post-trial reply brief. At trial he cross-examined a Dominion fact witness (Ms. Taylor), conducted the direct examination of one of Sierra Club's experts, and assisted in preparations for the examination of other witnesses.

17. Mr. Cleveland was involved at the outset of the litigation and was engaged in the review and drafting of Sierra Club's 60-day notice letter and the complaint, and in strategy discussions, and he drafted parts of Sierra Club's brief in opposition to Dominion's motion to dismiss. He deposed one of Dominion's expert witnesses (Dr. William Dunford), and, at trial, he conducted the direct examination of one of Sierra Club's experts (Dr. Michael Kavanaugh).

18. In addition to participating in major strategy discussions, Mr. Buppert deposed two of the experts disclosed by Dominion (Dr. William Langley and Mr. John Glover), and deposed third-party witness Mr. James Golden, with the Virginia Department of Environmental Quality ("DEQ"). At trial, Mr. Buppert cross-examined both Mr. Golden and Mr. Glover, and he conducted the direct examination of Ms. Judith Hinch, a standing declarant.

19. Ms. Fort researched the claims for a citizen suit against Dominion under the Clean Water Act, and prepared drafts of the 60-day notice letter and the complaint. Before Sierra Club made the decision to file suit, Ms. Fort and I reviewed numerous documents obtained through FOIA to investigate and evaluate the case. Ms. Fort also researched and drafted portions of Sierra Club's brief successfully opposing Dominion's motion to dismiss the complaint.

20. Mr. Gendzier drafted discovery requests; reviewed Dominion's documents produced during discovery; reviewed and managed e-discovery of Sierra Club documents; and

assisted with deposition and trial preparations.  He also worked closely with me, and with Sierra Club's experts, on the expert reports, and he assisted in drafting various motions and filings, including Sierra Club's pretrial disclosures and the post-trial summaries of expert testimony. Mr. Gendzier's efforts were essential to trial preparations and at trial.

21. This paragraph and the succeeding paragraphs describe the chronology of the case and elaborate on the nature of the work performed.  Sierra Club served the 60-day notice letter on Dominion on 14 December 2014 and filed the complaint on 19 March 2015.  Compl. ECF Nos. 1, 1-1 (notice letter, Ex. A). Dominion filed a motion to dismiss the complaint on 9 April 2015 (ECF Nos. 4, 5), to which Sierra Club responded on 23 April 2015 (ECF No. 13).

22. Following this Court's denial of Dominion's motion to dismiss the complaint (ECF No. 21), discovery ensued.  Sierra Club reviewed over 275,000 pages of documents produced by Dominion and over 13,000 pages of documents produced by AMEC, a key consultant for Dominion.  AMEC prepared, among other documents, Dominion's 2011 "Corrective Action Plan" proposing "monitored natural attenuation."

23. Beginning on 9 March 2016 through 4 May 2016, Sierra Club deposed nine fact witnesses, including three designated as 30(b)(6) witnesses. Dominion deposed four Sierra Club witnesses.  Two days before the close of discovery, Dominion disclosed Mr. Golden, DEQ, as a third party witness, whom Sierra Club deposed on 17 June 2016.

24. Sierra Club engaged a total of six experts, covering an array of technical fields, to analyze and opine on the technical issues and data in this case.  On 22 March 2016, Sierra Club submitted initial reports for all six experts, and rebuttal reports on 9 May 2016 in response to Dominion's reports for seven experts.   From 12 May through 26 May 2016, the parties

7

conducted depositions, held in Richmond, Charlottesville, Atlanta, and Washington, D.C., of all thirteen experts.

25. The case required extensive briefing both prior to and post-trial. For example, on 2 June 2016 Dominion moved for summary judgment, *see* ECF Nos. 107, 108, which required plaintiff's filing in opposition on 16 June 2016, *see* ECF No. 151, in the midst of intensive pretrial preparations before trial commenced on 21 June 2016. Pretrial preparations entailed, among other work, the filing of motions and responses *in limine* to exclude certain evidence and experts at trial, *see* ECF Nos. 90-92, 119-113, Dominion), ECF Nos. 135, 119-120,125-126, Sierra Club, and preparation of pretrial disclosures, pretrial stipulations, and the draft pretrial order. The parties appeared before Magistrate Judge Krask on 10 June 2016, resulting in the Final Pretrial Order entered that day (ECF No. 134), as supplemented a week later (ECF No. 157) following a hearing before the Magistrate Judge on deposition designations.

26. Pursuant to this Court's directive, Sierra Club prepared a pretrial bench memorandum, summarizing the relevant law and facts (ECF No. 146), and summaries of deposition testimony. Sierra Club submitted these summaries to Chambers by email on 17 June 2016, pursuant to this Court's 13 June 2016 Order (ECF No. 140), and supplemented the summaries on 19 June 2016, to reflect the rulings of Magistrate Judge Krask on deposition designations.

27. The four-day trial began on 21 June and continued through 24 June 2016, and involved the testimony of ten expert witnesses and the live testimony of six fact witnesses. Sierra Club presented testimony of four additional witnesses by video deposition or through having parts of the depositions transcripts entered into the record. Following the trial, plaintiff submitted its post-trial memorandum of law (ECF No. 178), proposed findings of fact (ECF No.

179), and summaries of expert opinions (ECF No. 179-1) on 7 July 2016, and its reply brief on 25 July 2016. (ECF No. 183).

28. In summary, the work performed by SELC attorneys for which Sierra Club seeks an award of fees can broadly be categorized as time spent: (1) researching the claims, and drafting the 60-day notice letter and the Complaint; (2) responding to Dominion's motion to dismiss the Complaint (including briefing in opposition to Dominion's Motion for Certification for Interlocutory Appeal; (3) document discovery; (4) preparation of initial and rebuttal expert reports; (5) depositions of fact witnesses; (6) expert witness depositions; (7) pretrial motions, stipulations and disclosures, and pretrial order; (8) brief in opposition to Dominion's motion for summary judgment; (9) bench memorandum and summaries of deposition testimony; (10) trial preparations and trial; and (11) post-trial briefing (including proposed findings of fact and summaries of expert testimony). For the convenience of the Court, the attorney hours, roughly broken down into these broad categories, are included as Exhibit D to the Plaintiff's Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert Witness Fees. (Classification of Attorney Work By Category). These are approximate allocations; the actual attorney records give the more precise description of the work performed and hours spent. *See* Exhibit C to the Plaintiff's Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert Witness Fees.

<u>Plaintiff's Attorney Fee Calculation and Exercise of Billing Judgment</u>

29. I have reviewed the time entries for each of the attorneys and have exercised professional billing judgment as to each entry claimed and as to the total hours for which reimbursement is sought. The time records for each attorney are included as Exhibit C to Plaintiff's Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert

9

Witness Fees. The time entries were either recorded contemporaneously or are reconstructed, using the utmost good faith effort to accurately reflect that portion of time expended on the described tasks for which plaintiff is seeking recovery. The records describe the work performed by the attorney, the date that the work was performed, and the amount of time spent. SELC attorneys record their time in 6 minute intervals (*i.e.*, 1/10th of an hour).

30. In addition to the hours reduced by individual timekeepers, I have tried to eliminate any time that could be construed as excessive, redundant, or inefficient. I have deleted specific entries on unsuccessful claims, including work solely in furtherance of Counts II and III of the Complaint and the requested relief of excavation and removal of the coal ash and the imposition of civil penalties. I also deleted all time spent working with Sierra Club's remedy experts (Dr. Philip Bedient, Dr. John Pardue, Dr. Michael Kavanaugh) on their expert reports and the time spent preparing these witnesses for trial. In addition, I deleted any time spent working with one of Sierra Club's expert (Dr. Dennis Lemly) who prepared initial and rebuttal reports but who did not testify at trial.

31. Further, in instances in which hearings or depositions necessarily involved the work of more than one attorney, the time entries in most cases reflect only the primary attorney's reduced hours. As an example, Mr. McLane conducted the individual deposition of Mr. Donald Hintz, a key Dominion fact witness, on 9 March 2016. Mr. Hintz was also the Rule 30(b)(6) designee for numerous topics; I conducted the 30(b)(6) deposition of Mr. Hinch on 15 March 2016. Both depositions involved complex, technical issues and voluminous exhibits, and required the work of several SELC attorneys to help prepare for and to attend the deposition. With the exception of only a few entries, Sierra Club is seeking fees only for work performed by Mr. McLane and by me, relating to the respective deposition.

32. The attorney time entries principally span the period beginning December 2014, coinciding with the preparation and serving of Sierra Club's 60-day notice letter, through July 2016, following the completion of post-trial briefing. A small amount of time in November 2014 is included in Ms. Fort's time records to account for some initial research related to the 60-day notice, as well as a nominal amount of time shown in my time records to review this Court's 23 March 2017 Opinion and Order (ECF Nos. 195, 196). In the exercise of billing judgment, I have deleted all other time spent researching the case and the time spent reviewing numerous documents obtained through FOIA to investigate the case. I also deleted the time entries for work performed after completion of post-trial briefing, including all hours related to the mediation sessions before Mr. Mark Rubin and for the work on Sierra Club's proposed remedial plans (*see* ECF No. 204), prepared in response to this Court's March 2017 Opinion and Order.

33. The exercise of billing judgment described in the foregoing paragraphs resulted in a reduction of the total hours for each attorney of about 75% to 80% from the hours originally recorded. With these reductions, the total number of hours for which Sierra Club seeks an award of fees is 1763.7 hours. The individual breakdowns are: Murray (393.4 hours), McLane (367 hours), Bowers (283 hours), Benforado (214.9 hours), Cleveland (90.5 hours), Buppert (102.9 hours), Gendzier (218.7 hours), and Fort (93.3 hours). *See* Exhibits C-D (Attorney Time Records, Classification of Attorney Work by Category) to Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert Witness Fees.

34. In my view, the hours requested are reasonable and the minimum needed for Sierra Club to have tried this case.

35. As set forth in the Declaration of L. Lee Byrd, Esquire, a shareholder at Sands Anderson PC in Richmond, the prevailing market for hourly billing rates in complex civil cases

in Richmond ranges from $375 to $675 for attorneys with more than 25 years of experience (*i.e.*, Murray); $290 to $410 for attorneys with nine to 13 years of experience (*i.e.*, McLane, Buppert, and Bowers); $250 to $305 for attorneys with approximately 5 years of experience (*i.e.*, Cleveland and Benforado), and $200 to $285 for attorneys having up to three years of experience (*i.e.*, Gendzier and Fort). Declaration of L. Lee Byrd, Esquire, Ex. E, ¶ 11.

36. Plaintiff seeks hourly rates of $350 for Mr. Bowers, $300 for Mr. McLane and Mr. Buppert, $250 for Mr. Cleveland and Mr. Benforado, $225 for Ms. Fort, $200 for Mr. Gendzier, and $400 as my hourly rate. As Mr. Byrd states in his declaration, the hourly rates requested for the work performed by the SELC attorneys are all near the low end of each applicable range, with the exception of the hourly rate for Mr. Bowers, which falls in the middle the applicable range. Declaration of L. Lee Byrd, Esquire, Ex. E, ¶ 12.

Applying the requested rates to the hours set forth above yields the following:

| Attorney | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Murray | 393.4 | $400/hr. | $157,360 |
| McLane | 367 | $300/hr. | $110,100 |
| Bowers | 283 | $350/hr. | $99,050 |
| Buppert | 102.9 | $300/hr. | $30,870 |
| Benforado | 214.9 | $250/hr. | $53,725 |
| Cleveland | 90.5 | $250/hr. | $22,625 |
| Gendzier | 218.7 | $200/hr. | $43,740 |
| Fort | 93.3 | $225/hr. | $20,992.50 |

**TOTAL HOURS**     **TOTAL FEES**

1763.7     **$538,462.50**

37. Plaintiff also seeks recovery of fees for compensation of only two of Plaintiff's six experts -- Anthony Brown and Dr. Robert Parette. Mr. Brown testified regarding the hydrological connection between the groundwater and the adjacent surface waters, showing that the arsenic from the coal ash is discharging directly into the river. Dr. Parette explained the fate

12

and transport of arsenic under the site conditions, explaining that the high levels of arsenic will continue to persist indefinitely because of the ineffectiveness of "monitored natural attenuation" at the CEC. Both of these experts were essential to Sierra Club's success on Count I of the Complaint.

38. Sierra Club is seeking fees for work performed by Dr. Parette beginning in November 2015, and beginning at the end of December 2015 for Mr. Brown's work, through the end of the trial in June 2016 for both experts. As a result, Plaintiff is not seeking to recover fees for significant work performed by Dr. Parette before November 2015 in assisting plaintiff's investigation and evaluation of the case, or the later work of Mr. Brown in developing Sierra Club's proposed remedial plan filed in April 2017 (*see* ECF No. 204). The actual amounts incurred for work performed during the relevant time periods were $140,194.70 for Mr. Brown and $78,176.28 for Dr. Parette. *See* Exhibits F and G, Memorandum in Support of Plaintiff's Motion for Reasonable Attorney and Expert Witness Fees. From these amounts, Sierra Club has made additional cuts, and is seeking an award in this case of $75,000 for Mr. Brown's work and $45,000 for Dr. Parette's work.

39. SELC litigated this matter in the public interest on Sierra Club's behalf. SELC did not charge Sierra Club for its services or expenses.

40. In conclusion, Plaintiff seeks a total of $538,462.50 for attorneys' fees and $120,000 for expert witness fees, for a total of $658,462.50.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted this 27 day of July 2017,

*Deborah M. Murray*
Deborah M. Murray (VA Bar 19000)

13

Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA   22902
434.977.4090
dmurray@selcva.org

Counsel for Sierra Club